**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Daniel TOBIN, Defendant-Appellant.**

**No. 17872.**

United States Court of Appeals,
Seventh Circuit.

May 15, 1970.

Anton R. Valukas, Chicago, Ill., for appellant.

---

7. Counsel erroneously included a copy in his record appendix.

Frank J. Violanti, U. S. Atty., Springfield, Ill., Max J. Lipkin, Peoria, Ill., for appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

HASTINGS, Senior Circuit Judge.

On April 5, 1967, defendant Daniel Tobin was charged in a two count indictment with the knowing transportation in interstate commerce of two women, Janice Tressa and Venus Wright, for immoral purposes, in violation of 18 U.S. C.A. § 2421.[1] On January 15, 1968, defendant appeared in the district court and entered a plea of guilty to count one of the indictment; count two was dismissed. Defendant was sentenced to four years' imprisonment.

On appeal of that conviction, this court reversed and remanded with instructions to vacate the guilty plea which we found to have been entered without counsel or a knowing waiver thereof. Tobin v. United States, 7 Cir., 402 F.2d 307 (1968).

On remand, defendant was found guilty on the count pertaining to Janice Tressa after a one day jury trial before the same trial judge. The second count was not reinstated. He was sentenced to five years' imprisonment. He appeals the judgment of conviction and sentence. We reverse.

Defendant's major contention on this appeal is that he was denied a fair and impartial trial when, in the jury's presence, the trial judge displayed hostility toward his attorney and then subjected defendant to extensive cross-examination after the Government had finished its cross-examination.

At trial, defendant admitted that he transported Janice Tressa from Peoria, Illinois, to Topeka, Kansas; that he was aware that she had been engaging in prostitution in Peoria; and that he was at that time living off her earnings as a prostitute. His defense was that his dominant motive in transporting Janice Tressa to Topeka was not for immoral purposes but rather was for accommodation in that he had been living with her as her common law husband and desired to continue to do so. Both Tobin and Janice, as a Government witness, testified that they were living together as "boyfriend and girlfriend" and that while Tobin took money from Janice, he in no way compelled or aided her in her profession.

Conflicting accounts were given of the circumstances which led Tobin to drive Venus Wright and Janice to Topeka. It seems clear that Venus had independently planned a trip to Topeka to work as a prostitute in a hotel at which she had previously worked. She had purchased a train ticket for the trip. Janice and Tobin then arrived on the scene with a car which he had borrowed to bring Janice back to Peoria after a sojourn in East St. Louis. Venus testified she told Tobin she was going to Topeka and that he then asked if another girl could work there and if he and Janice could go. Venus said yes. Janice testified that Tobin told her of this arrangement and that they were going to go with Venus. However, Janice also testified that she was present during the conversation and that "we just decided to go, I mean there was this other girl going and we just decided to go with her."

Tobin testified that he and Janice talked to Venus and that it was just decided that all three would go to Topeka by car because it would be cheaper. He denied asking Venus if Janice could work in Topeka and also denied asking Janice

---

1. So far as relevant, Section 2421 provides:
   "§ 2421. Transportation generally
   Whoever knowingly transports in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both."

if she wanted to go. He said that Janice wanted to go because she wanted to get away from her family, which was giving her trouble, and that Venus was the only person she knew and Venus was leaving.

It is undisputed that all three then drove to Topeka in Tobin's borrowed car and that all three shared expenses for the trip. Once in Topeka, Venus handled all business arrangements for herself and Janice. Tobin had no part in such arrangements. He did continue to live with Janice.

Defendant does not contend that the Government produced insufficient evidence to support his conviction. Rather, he asserts that the success of his defense depended directly on whether the jury believed his testimony or that of the two prostitutes who testified for the Government. He contends that his credibility was effectively destroyed in the eyes of the jury by the actions of the trial judge.

Defendant first points to certain interchanges between the trial judge and his attorney in which the judge made remarks which might have been construed by the jury as expressing disapproval of counsel's tactics and the merits of the defense. When defendant's attorney requested leave to recall a Government witness later in the trial if that proved necessary, the court remarked that the witness's time was at Government expense but that she would be asked to stay. At the close of the Government's case, the defense requested a recess for the purpose of moving for a directed verdict out of the presence of the jury. The court denied this request indicating that it was a waste of time, that motions should be in writing and that defendant's attorney should refrain from trying to tell the court what the usual practice was.

Defendant does not contend that these remarks standing alone amount to reversible error. Cf. Federal Rules of Criminal Procedure, Rule 47, 18 U.S.C.A.

Rule 47; Tanner v. United States, 8 Cir., 401 F.2d 281, 285 (1968), cert. den. 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed. 2d 806 (1969); and United States v. Coke, 2 Cir., 339 F.2d 183, 186 (1964). However, he asserts that these comments, combined with the judge's later cross-examination of the defendant, conveyed to the jury the judge's own doubts about the merits of the defense and thus denied him a fair trial.

At the close of the Government's cross-examination, the court cross-examined Tobin as follows:

"The Court: Mr. Tobin, how long were you in Peoria the first time with Janice?

The Witness: Around the middle of April—no, around the middle of March until the first of April.

The Court: Were you employed at that time?

The Witness: No sir.

The Court: Were you receiving some funds from your brother or your mother at that time?

The Witness: No.

The Court: All the funds you received came from this girl, is that correct?

The Witness: At that time, yes.

The Court: You lived with her during that period, is that correct?

The Witness: Yes.

The Court: And that was broken up by a raid as I understand it, is that right?

The Witness: Yes, right.

The Court: Then you came back up here for her to go back into the business, I take it, a short time after that, is that correct?

The Witness: She returned to Peoria, yes.

The Court: She returned to Peoria with you didn't she?

The Witness: Well, I returned with her, she returned with me, both ways.

The Court: You both came together?

The Witness: Yah.

The Court: Is there any question in your mind about what she was coming up here for?

The Witness: Well, I knew, she knew, there was no question, no.

The Court: Now that same evening you decided to go all together, as I understand it, to go to Topeka, is that correct?

The Witness: Right.

The Court: Any question about what she was going to do out there?

The Witness: There was no question, I don't know.

The Court: You knew what she was going to do and what the other girl was going to do didn't you?

The Witness: Well myself, I had no intention of staying in Topeka or either did Janice at the time until after we arrived.

The Court: I am talking about whether you knew what they were going out there for?

The Witness: I didn't care what they was going for, they asked me to take them and I took them.

The Court: You knew what they did when they got there didn't you?

The Witness: Yah, I know what they did when they got there.

The Court: Were you employed while you were out there?

The Witness: No.

\* \* \*."

Following this cross-examination, out of the presence of the jury, the defendant moved for a mistrial on the ground that the court departed from the role of an impartial arbiter and became somewhat of a prosecutor and that the jury would attach undue credence to the court's very effective method of cross-examination. The motion was denied.

This line of questioning went to a critical element of the defense, Tobin's *motivation* in making the trip from Peoria to Topeka with Janice. As stated by the Supreme Court, in discussing the effect of an erroneous charge to the jury, " 'The influence of the trial judge on the jury is necessarily and properly of great weight,' Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841, 923, and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word." Bollenbach v. United States, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). *See also*, Quercia v. United States, 289 U.S. 466 at 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). We evidenced similar concern in United States v. Carmel, 7 Cir., 267 F.2d 345, 350 (1959), where we said: "We realize that an alert and capable judge at times feels that he can assist in developing the evidence by participating in the interrogation of witnesses. However, he would ordinarily do well to forego such intrusions upon the function of counsel, thus maintaining the court's position of impartiality in the eyes of the ever-observant jurors."

■■ The avoidance of any appearance of lack of impartiality is of particular importance in cases where, as here, the question of guilt may be a close one. To obtain a conviction here, it was necessary for the Government to prove beyond a reasonable doubt that Tobin's *dominant motive* in taking Janice from Peoria to Topeka was to have her engage in prostitution. His action must have been designed to bring about that result. The mere fact that she did engage in prostitution upon her arrival in Topeka is not sufficient. Hawkins v. United States, 358 U.S. 74, 79, 79 S.Ct. 136, 3

L.Ed.2d 125 (1958); Mortensen v. United States, 322 U.S. 369, 374–375, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944).

■ The presence of such dominant motive was the only contested fact at the trial. A jury finding of such dominant motive depended upon the jury believing Janice and Venus rather than Tobin about the circumstances surrounding the trip. The prostitutes' testimony was not without ambiguity, internal contradiction and points of incredibility. Thus, we cannot say that the jury could have done nothing but believe them and disbelieve Tobin. The cross-examination by the trial court went directly to the question of defendant's credibility. In these circumstances, we are compelled to conclude that the defendant was denied a fair trial when the trial court subjected him to an intense cross-examination which might easily have given the jury the impression that the court had doubts concerning the truthfulness of his testimony on this critical issue.

Defendant also objects to three instructions given by the trial court. One of these was not objected to at trial. Defendant's argument as to the other two instructions stresses, not that they would be erroneous in all circumstances, but that they were erroneous in the light of what occurred during this particular trial. Having concluded that what occurred during the trial requires a reversal, we need not reach the question of whether these instructions, in this particular case, compounded the error.

Pursuant to the Criminal Justice Act of 1964, Mr. Anton R. Valukas of the Chicago Bar was appointed to represent defendant on this appeal. We appreciate his effective service and compliment both him and Mr. John D. Shullenberger, who assisted him, for their able presentation.

The judgment of conviction and sentence is reversed. This cause is remanded to the district court for a new trial.

Reversed and remanded.