999 F.2d 541
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert D. SCOTT, Defendant-Appellant.
 No. 92-6435.
 United States Court of Appeals, Sixth Circuit.
 July 26, 1993.
 
 Before GUY and BATCHELDER, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Robert Scott, appeals his conviction for interstate transportation of a female minor and other females for purposes of prostitution, interstate transportation of a minor with intent that she engage in sexual intercourse with him, and conspiracy. Scott contends that the Speedy Trial Act was violated both because of the time between his arrest and indictment and the time between indictment and trial. Scott also challenges the admission at trial of a book of sexually explicit photographs, which he alleges was irrelevant and unduly prejudicial. Finally, Scott argues that insufficient evidence existed to convict him of any of the counts against him. We affirm.
 
 I.
 
 2
 Robert Scott was a 26-year-old native of Toledo, Ohio, who, according to one of his acquaintances, worked as a pimp. In November of 1990, Scott encountered Betty Frey, also a resident of Toledo, who told him that she was planning to run away. Frey was born on July 14, 1973, and was considered a minor on the day that she met Scott. Frey asked Scott to take her to a small town in Michigan, where she was going to "play it off with her mom." Presumably, Frey planned to call her mother long distance and tell her that she had run away simply to worry her. Scott complied with Frey's request and took her to Michigan. Once there, the couple went to a motel and had sexual intercourse.
 
 
 3
 At some point, Scott suggested that Frey accompany him to Columbus, Ohio. She agreed, and ultimately the pair traveled to Columbus on November 16 with Jeanine Sheppard, Theresa Riebesehl, and codefendant Derek Maes. The group checked into a Columbus motel, where Scott and Frey again had sexual intercourse. Scott then told Frey that he did not have enough money for them to return to Toledo and he therefore needed a favor from her. Scott wanted her to make some money by prostituting herself, and he gave Frey condoms and sent her out with Sheppard and Riebesehl. The three all engaged in sexual intercourse for money, and upon her return to the motel Frey gave Scott all of the money she made. This was the first time Frey had ever engaged in prostitution.
 
 
 4
 The group returned to Toledo the next day, where they stayed in an apartment with Maes and Betty Sims, Scott's live-in girlfriend. Throughout November and December of 1990, Scott sent Frey out on the streets of Toledo to engage in prostitution. Often, Frey was accompanied by Ruth DeBolt, Claudia Tinsley, and codefendant Kimberly Bull.
 
 
 5
 Late in December of 1990, Scott, Frey, Bull, DeBolt, and Tinsley left Toledo in Scott's automobile destined for Memphis, Tennessee. Maes, Sheppard, Riebesehl, Lisa Gonzales, and codefendant David Powers followed Scott in Maes' vehicle. According to the government, the purpose of this trip was for the females to make money by prostituting themselves. On the trip down, the cars would stop at rest areas and truck stops and the females would attempt to prostitute themselves to truck drivers and others. Near Elizabethtown, Kentucky, the caravan stopped for the night when Scott's car broke down. Scott, Maes, and Powers left the seven women at an Elizabethtown motel while they returned to Toledo to retrieve another vehicle. Prior to leaving for Toledo, however, Scott and Frey once again had sexual intercourse. While in Elizabethtown, DeBolt, Frey, and Tinsley went to a local tavern where DeBolt made $40 on a "date" with one of the men she met.
 
 
 6
 When the three men returned the next day, the two carloads departed Elizabethtown for Memphis, Tennessee. They registered at a Days Inn Motel in Memphis at 4:15 a.m. on January 2, 1991. A motel security guard assisted four of the women with their luggage. On an elevator going up to their rooms, the guard commented that if the elevator stuck at least he would have company. One of the women retorted, "Well, you couldn't afford it." Later, codefendant Bull asked the guard whether he would like a "date," and also inquired where the "hookers hang out" in Memphis.
 
 
 7
 While in the motel in Memphis, codefendant Powers asked Frey to become his prostitute. As they were talking, Bull entered the room and she and Frey began to fight. Frey sustained scratches behind her ear and a bite mark on her arm from the scuffle. Scott also attacked Frey while the group was in Memphis, but this was not the first time that he had assaulted Frey. Scott's assault of Frey in Memphis was precipitated by Frey's request for bus money so she could return home to Toledo. After Scott denied her request, Frey called her mother and told her she had been beaten and needed money for a bus ticket home. Frey's mother then called Memphis police, who descended upon the Days Inn.
 
 
 8
 One of the items obtained by police was a photo album that contained several pictures of the parties involved in this case. The album, which was transferred to the trunk of Maes' car in Elizabethtown, Kentucky, after Scott's car broke down, included nude photos of several of the individuals and photos of some of the individuals engaged in oral sex. Frey testified that many of the photos were taken at the Columbus, Ohio, motel where the group stayed in November, but several other photos were taken while the group traveled from Toledo to Memphis.
 
 
 9
 Frey also testified that Scott had given her and the other women instructions about how to observe police vice officers. According to Frey, Scott had told them to look under the seat of customers' cars for a radio or a gun to "make sure they ain't vice." If the women found such items, they were to open the door of the car and flee.
 
 
 10
 On February 12, 1991, a grand jury returned a 10-count indictment against Scott and others in which Scott was named in eight of the counts. The charges against Scott included: (1) unlawful, knowing, and intentional transport of a minor in interstate commerce for purposes of prostitution in violation of 18 U.S.C. §§ 2422 and 2423; (2) knowing transport of a minor in interstate commerce with intent that she engage in sexual intercourse with Scott in violation of Tennessee Code Annotated § 39-13-506 and 18 U.S.C. § 2423; (3) knowing persuasion of a minor to travel in interstate commerce for purposes of prostitution in violation of 18 U.S.C. § 2422; (4) knowing interstate transport of individuals for purposes of prostitution in violation 18 U.S.C. §§ 2421 and 2422; and (5) conspiracy to transport individuals in interstate commerce for purposes of prostitution. Scott was found guilty on all eight counts and sentenced to 105 months in jail.
 
 II.
 
 11
 Initially, Scott contends that he was neither indicted nor brought to trial within the time limit required by the Speedy Trial Act. The trial court found that any periods of delay in Scott's case were excludable under the Act. We agree.
 
 
 12
 According to 18 U.S.C. § 3161(b), an indictment against a defendant must be filed within 30 days from the date of the defendant's arrest. In this case, Scott was arrested on January 7, 1991. On January 29, the government moved for an extension of time to indict Scott because two witnesses that the government had subpoenaed failed to appear at a grand jury proceeding on that date. Pursuant to § 3161(h)(3)(A),[1] the district court granted the government an additional 30 days, commencing February 4, in which to obtain an indictment against Scott. The government did so on February 12, well within the additional time given it by the district court. Thus, Scott was indicted in a timely manner, and the district court did not abuse its discretion in granting the government additional time to bring an indictment given the absence of essential witnesses. Cf. United States v. Cianciola, 920 F.2d 1295, 1301 (6th Cir.1990) (analyzing Speedy Trial Act issues under an abuse of discretion standard), cert. denied, --- U.S. ----, 111 S.Ct. 2830 (1991). Moreover, Scott has failed to show that actual prejudice resulted from the 36-day period between his arrest on January 7 and his indictment on February 12. See United States v. Monger, 879 F.2d 218, 222 (6th Cir.), cert. denied, 493 U.S. 997 (1989) (requiring actual prejudice in order to obtain reversal of district court's decision to grant an excludable continuance of indictment or trial).
 
 
 13
 The Speedy Trial Act also requires that a defendant be brought to trial within 70 days following his indictment or first appearance before the court, whichever is later. Cianciola, 920 F.2d at 1298 (citation omitted). Scott and three codefendants were indicted on February 12, but the last defendant (David Powers) did not make an initial appearance in district court until April 3, 1991. No motion for severance had been granted, and the district court therefore determined that the 70-day period for commencement of trial began on that date. See 18 U.S.C. § 3161(h)(7) (providing for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"). Scott's trial did not begin until October 21, 1990, over six months later. He contends that this length of time violated the commands of the Speedy Trial Act.
 
 
 14
 Between January and October 1991, approximately 45 pretrial motions were filed by the parties in this case. In rejecting Scott's motion to dismiss the indictment for violation of the Speedy Trial Act, the trial court considered several motions that provided a basis for excluding time. On April 11, for example, Scott's codefendant Kimberly Bull moved for new counsel. The trial court granted her motion, and new counsel was appointed on April 25. This time was considered excludable pursuant to 18 U.S.C. § 3161(h)(1)(F), which provides for excludable delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[.]" The case was then set for trial on June 17, but Bull's counsel moved for a continuance to prepare for trial, and the case was reset for July 22. This time was also excluded. Finally, because at various times both the government and defense counsel moved for continuances due to their inability to locate material witnesses, the trial court moved the trial to October 21. This time was excluded pursuant to § 3161(h)(3)(A), which provides for excludable delay of any period "resulting from the absence or unavailability of the defendant or an essential witness."
 
 
 15
 No evidence exists that the trial court abused its discretion in granting exclusions from the speedy trial period. Defendant has argued neither that the prosecution intentionally delayed the trial nor that he suffered actual prejudice. See United States v. Williams, 711 F.2d 748 (6th Cir.) (delay during pendency of motions may under some circumstances constitute denial of right to speedy trial, but, absent evidence of intentional prosecutorial delay and actual prejudice to the defendant, right to speedy trial is not violated by delay while motions are pending), cert. denied 464 U.S. 986 (1983). In addition, many of the pretrial motions that the trial court considered were brought by Scott or his codefendants. Given that the trial court properly computed exclusions from the 70-day speedy trial period, defendant was brought to trial within the time limits established by the Speedy Trial Act.
 
 III.
 
 16
 Scott next contends that the trial court violated Federal Rules of Evidence 402 and 403 by allowing the admission of a photo album depicting Scott and several other individuals in various stages of undress and engaged in sexual activity. According to Scott, the pictures are not an element of any of the substantive crimes with which he is charged and are therefore irrelevant. Further, because some of the photos portray interracial sex, Scott argues that they are unduly prejudicial and would tend "to inflame racial and religious prejudices the jurors may harbor."
 
 
 17
 There is no question that this evidence has some relevance to the relationship among the parties. Some of the photos also showed the physical abuse that Betty Frey received, thereby corroborating the government's theory that she had been controlled by Scott. Thus, the admission of the photo album would not violate Federal Rule of Evidence 402, because the pictures have at least some relevance to this case.
 
 
 18
 The decision as to whether evidence is admissible under Rule 403 is left to the sound discretion of the trial court, and the value of the evidence must be substantially outweighed by its prejudicial character in order to justify its exclusion under Rule 403. United States v. Castro, 908 F.2d 85, 88 (6th Cir.1990). We review this exercise of discretion "in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Zipkin, 729 F.2d 384, 389 (6th Cir.1984).
 
 
 19
 The trial court reviewed carefully the evidence and found the photo album highly probative as to the relationship among the parties and as to their intent and purpose for travelling to Memphis. We agree. Although some of them were taken prior to the trip in question, the photos tend to establish that the parties knew one another intimately. That the pictures were in Scott's possession tends to establish that he exerted some control over the women. One of the photos also showed one of the women lying naked on a bed with money on her stomach. As the district court noted, such evidence is relevant to the question of whether the women traded sex for money.
 
 
 20
 Scott's claim of unfair prejudice is groundless. Several courts have upheld the admission of sexually explicit photos in cases involving violations of the Mann Act. See, e.g., United States v. Boyd, 610 F.2d 521 (8th Cir.1979), cert. denied, 444 U.S. 1089 (1980); United States v. Harris, 534 F.2d 207 (10th Cir.1975), cert. denied, 429 U.S. 941 (1976). Moreover, the trial court questioned prospective jurors about their ability to view graphic photographs, some of which involved interracial sexual activity. The interracial nature of this case was evident when witnesses testified, and the photos simply constituted more evidence of the relationships among the individuals involved. The trial court did not abuse its discretion in allowing the admission of the photo album.
 
 IV.
 
 21
 Finally, Scott challenges the sufficiency of the evidence necessary to convict him. Scott argues that the government did not prove that the dominant motive of the trip was to engage in prostitution. In addition, Scott contends that the government should have been required to prove that Scott knew that Betty Frey was a minor when he transported her across state lines. Alternatively, he suggests that his lack of knowledge as to Frey's age should have been an affirmative defense to the charges regarding his involvement with a minor.
 
 
 22
 In reviewing the sufficiency of the evidence, we must view the evidence, and all reasonable inferences from the evidence, in the light most favorable to the government. United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982). We must affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 23
 To support a conviction under the Mann Act, courts have required that a dominant purpose of the interstate transportation must be unlawful conduct. See, e.g., United States v. Prater, 518 F.2d 817, 819 (7th Cir.1975) ("An intention that the women or girls shall engage in the conduct outlawed by [the Act] ... must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement.") (citations omitted). Scott argues that he and the others were travelling South to escape the cold Toledo winter. However, sufficient evidence existed to allow a reasonable juror to conclude otherwise. Scott and the others had travelled previously to Columbus, Ohio, to engage in acts of prostitution. In addition, testimony at trial established that many of the women solicited clients while at rest areas and truck stops. The "date" that DeBolt procured while the group was in Elizabethtown, Kentucky; the inquiries to the Memphis security guard about where the "hookers hang out" in Memphis; and the pictures contained in Scott's photo album all evinced Scott's intent to transport women across state lines to engage in prostitution.
 
 
 24
 Knowledge that a girl is under 18 years of age when transported interstate is not part of the proof required of the government in order to sustain a conviction under 18 U.S.C. § 2423, and Scott's argument to the contrary is unavailing. The government proved, as it must, that Betty Frey was in fact a minor at the time of the interstate transportation by offering her testimony that she was born on July 14, 1973, and the interstate transportation occurred in late 1990 and early January of 1991. The Mann Act does not require more. See, e.g., United States v. Hamilton, 456 F.2d 171, 173 (3d Cir.), cert. denied, 406 U.S. 947 (1972).
 
 
 25
 Defendant argues that Hamilton and its progeny are wrongly decided, because it is unconstitutional to lessen the government's burden in these cases by not requiring the government to prove that the defendant knew of the victim's age. But, the legislature has wide latitude to declare what constitutes an offense against society and to define the elements that constitute such an offense. Cf. Whalen v. United States, 445 U.S. 684, 689 (1980). It does not offend due process for Congress to draft a statute that does not require the prosecution to show that a defendant believed the victim to be under the age of 18 when she was transported interstate, because the law has traditionally afforded minors substantial protection from others. See United States v. Ransom, 942 F.2d 775, 777 (10th Cir.1991) (discussing 18 U.S.C. § 2241, which prohibits those in the maritime and territorial jurisdiction of the United States and in a federal prison from knowingly engaging in a sex act with another who has not attained the age of 12, and rejecting claim that due process requires government to prove defendant's intent because "from ancient times the law has afforded special protection to those deemed too young to understand the consequences of their actions"), cert. denied, --- U.S. ----, 112 S.Ct. 897 (1992).
 
 
 26
 Similarly, the Constitution does not require that a defendant be provided a defense of mistake of age when accused of a Mann Act violation involving a minor. Cf. id. at 776-78. Scott argues that the Equal Protection Clause is violated if he is unable to assert a defense of mistake, because Congress provided for such a defense when it enacted 18 U.S.C. § 2243, which criminalizes knowing engagement in a sexual act with another under the age of 16 by those in the maritime and territorial jurisdiction of the United States or in a federal prison. According to Scott, no rational basis exists for the distinction between the two statutes.
 
 
 27
 Scott was convicted of transporting a minor in interstate commerce with the intent that she engage in prostitution. He was also convicted for knowingly transporting a minor in interstate commerce with the intent that the minor would engage in sexual intercourse with him. Both of these convictions rested upon 18 U.S.C. § 2423, which provides:
 
 
 28
 Whoever knowingly transports any individual under the age of 18 years in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title or imprisoned not more than ten years, or both.
 
 
 29
 Assuming, without deciding, that Scott is sufficiently "similarly situated" to a defendant accused of statutory rape of a minor under the age of 16 within the territorial or maritime jurisdiction of the United States, we find that a rational basis exists for allowing the defense of mistake in 18 U.S.C. § 2243 and denying such a defense under the Mann Act. The latter Act criminalizes prostitution or other criminal sexual activity that involves interstate commerce. Thus, minors in particular will often be very far from their usual support systems when transported interstate, and it is rational for Congress to want to heighten protection of such minor victims by denying Mann Act defendants the defense of mistake. Moreover, the Equal Protection Clause is not offended by gradual, incremental change in the law. See, e.g., Railway Express v. New York, 336 U.S. 106, 110 (1949) ("It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."); see also Dallas v. Stanglin, 490 U.S. 19, 26 (1990) ("[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' ") (citations omitted). Denying Scott the defense of mistake, then, does not violate the Constitution.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Honorable Wendell A. Miles, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 That section provides in pertinent part as follows:
 The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
 ....
 (3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.
 18 U.S.C. § 3161(h).