## HAWKINS v. UNITED STATES.

No. 20.   Argued October 14, 1958.—Decided November 24, 1958.

*Kenneth R. King* and *Byron Tunnell* argued the cause and filed a brief for petitioner.

*Kirby W. Patterson* argued the cause for the United States.   With him on the brief were *Solicitor General Rankin, Assistant Attorney General Anderson* and *Beatrice Rosenberg.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner was convicted and sentenced to five years imprisonment by a United States District Court in Oklahoma on a charge that he violated the Mann Act, 18 U. S. C. § 2421, by transporting a girl from Arkansas to Oklahoma for immoral purposes.   Over petitioner's objection the District Court permitted the Government

to use his wife as a witness against him.[1] Relying on *Yoder* v. *United States*, 80 F. 2d 665, the Court of Appeals for the Tenth Circuit held that this was not error. 249 F. 2d 735. As other Courts of Appeals have followed a long-standing rule of evidence which bars a husband or wife from testifying against his or her spouse,[2] we granted certiorari. 355 U. S. 925.

The common-law rule, accepted at an early date as controlling in this country, was that husband and wife were incompetent as witnesses for or against each other. The rule rested mainly on a desire to foster peace in the family and on a general unwillingness to use testimony of witnesses tempted by strong self-interest to testify falsely. Since a defendant was barred as a witness in his own behalf because of interest, it was quite natural to bar his spouse in view of the prevailing legal fiction that husband and wife were one person. See 1 Coke, Commentary upon Littleton (19th ed. 1832), 6. b. The rule yielded to exceptions in certain types of cases, however. Thus, this Court in *Stein* v. *Bowman*, 13 Pet. 209, while recognizing the "general rule that neither a husband nor wife can be a witness for or against the other," noted that the rule does not apply "where the husband commits an offence against the person of his wife." 13 Pet., at 221. But the Court emphasized that no exception left spouses free to testify for or against each other merely because they so desired. 13 Pet., at 223.[3]

---

[1] While the wife had been placed under bond to appear in District Court, she offered no objection in court to testifying against her husband.

[2] See, *e. g., Paul* v. *United States*, 79 F. 2d 561 (C. A. 3d Cir.); *Brunner* v. *United States*, 168 F. 2d 281 (C. A. 6th Cir.); *United States* v. *Walker*, 176 F. 2d 564 (C. A. 2d Cir.).

[3] *Stein* v. *Bowman* was a civil action involving testimony of a wife about conversations she had with her husband. The opinion shows, however, that the Court was concerned with the broader question here involved.

Aside from slight variations in application, and despite many critical comments, the rule stated in *Stein* v. *Bowman* was followed by this and other federal courts until 1933 when this Court decided *Funk* v. *United States*, 290 U. S. 371.[4] That case rejected the phase of the common-law rule which excluded testimony by spouses *for* each other. The Court recognized that the basic reason underlying this exclusion of evidence had been the practice of disqualifying witnesses with a personal interest in the outcome of a case. Widespread disqualifications because of interest, however, had long since been abolished both in this country and in England in accordance with the modern trend which permitted interested witnesses to testify and left it for the jury to assess their credibility. Certainly, since defendants were uniformly allowed to testify in their own behalf, there was no longer a good reason to prevent them from using their spouses as witnesses. With the original reason for barring favorable testimony of spouses gone the Court concluded that this aspect of the old rule should go too.

The *Funk* case, however, did not criticize the phase of the common-law rule which allowed either spouse to exclude adverse testimony by the other, but left this question open to further scrutiny. 290 U. S., at 373; *Griffin* v. *United States*, 336 U. S. 704, 714–715. More recently, Congress has confirmed the authority asserted by this Court in *Funk* to determine admissibility of evidence under the "principles of the common law as they

---

[4] See, *e. g.*, *Miles* v. *United States*, 103 U. S. 304; *Graves* v. *United States*, 150 U. S. 118; *Jin Fuey Moy* v. *United States*, 254 U. S. 189. Compare *Benson* v. *United States*, 146 U. S. 325, 331–333. For criticism of the rule, see 7 Bentham, Rationale of Judicial Evidence (Bowring ed. 1843), 480–486; 2 Wigmore, Evidence (3d ed. 1940), §§ 600–620; 8 *id.*, §§ 2227–2245; Hutchins and Slesinger, Some Observations on the Law of Evidence: Family Relations, 13 Minn. L. Rev. 675.

may be interpreted · . . . in the light of reason and experience." Fed. Rules Crim. Proc., 26. The Government does not here suggest that authority, reason or experience requires us wholly to reject the old rule forbidding one spouse to testify against the other. It does ask that we modify the rule so that while a husband or wife will not be compelled to testify against the other, either will be free to do so voluntarily. Nothing in this Court's cases supports such a distinction between compelled and voluntary testimony, and it was emphatically rejected in *Stein* v. *Bowman, supra,* a leading American statement of the basic principles on which the rule rests. 13 Pet., at 223. Consequently, if we are to modify the rule as the Government urges, we must look to experience and reason, not to authority.

While the rule forbidding testimony of one spouse *for* the other was supported by reasons which time and changing legal practices had undermined, we are not prepared to say the same about the rule barring testimony of one spouse *against* the other. The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well. Such a belief has never been unreasonable and is not now. Moreover, it is difficult to see how family harmony is less disturbed by a wife's voluntary testimony against her husband than by her compelled testimony. In truth, it seems probable that much more bitterness would be engendered by voluntary testimony than by that which is compelled. But the Government argues that the fact a husband or wife testifies against the other voluntarily is strong indication that the marriage is already gone. Doubtless this is often true. But not all marital flare-ups in which one spouse wants to hurt the other are permanent. The widespread

success achieved by courts throughout the country in conciliating family differences is a real indication that some apparently broken homes can be saved provided no unforgivable act is done by either party. Adverse testimony given in criminal proceedings would, we think, be likely to destroy almost any marriage.

Of course, cases can be pointed out in which this exclusionary rule has worked apparent injustice. But Congress or this Court, by decision or under its rule-making power, 18 U. S. C. § 3771, can change or modify the rule where circumstances or further experience dictates. In fact, specific changes have been made from time to time. Over the years the rule has evolved from the common-law absolute disqualification to a rule which bars the testimony of one spouse against the other unless both consent. See *Stein* v. *Bowman, supra; Funk* v. *United States, supra; Benson* v. *United States,* 146 U. S. 325, 331–333; *United States* v. *Mitchell,* 137 F. 2d 1006, 1008. In 1887 Congress enabled either spouse to testify in prosecutions against the other for bigamy, polygamy or unlawful cohabitation. 24 Stat. 635. See *Miles* v. *United States,* 103 U. S. 304, 315–316. Similarly, in 1917, and again in 1952, Congress made wives and husbands competent to testify against each other in prosecutions for importing aliens for immoral purposes. 39 Stat. 878 (1917), re-enacted as 66 Stat. 230, 8 U. S. C. § 1328 (1952).

Other jurisdictions have been reluctant to do more than modify the rule. English statutes permit spouses to testify against each other in prosecutions for only certain types of crimes. See Evidence of Spouses in Criminal Cases, 99 Sol. J. 551. And most American States retain the rule, though many provide exceptions in some classes of cases.[5] The limited nature of these exceptions

---

[5] See 2 Wigmore, Evidence (3d ed. 1940), § 488; 8 *id.,* § 2240; Note, 38 Va. L. Rev. 359, 362–367.

shows there is still a widespread belief, grounded on present conditions, that the law should not force or encourage testimony which might alienate husband and wife, or further inflame existing domestic differences. Under these circumstances we are unable to subscribe to the idea that an exclusionary rule based on the persistent instincts of several centuries should now be abandoned. As we have already indicated, however, this decision does not foreclose whatever changes in the rule may eventually be dictated by "reason and experience."

Notwithstanding the error in admitting the wife's testimony, we are urged to affirm the conviction upon the alternative holding of the Court of Appeals that her evidence was harmless to petitioner. See Fed. Rules Crim. Proc., 52 (a). But after examining the record we cannot say that her testimony did not have substantial influence on the jury. See *Kotteakos* v. *United States,* 328 U. S. 750, 764–765. Interstate transportation of the prosecutrix between Arkansas and Oklahoma was conceded, and the only factual issue in the case was whether petitioner's dominant purpose in making the trip was to facilitate her practice of prostitution in Tulsa, Oklahoma.[6]

---

[6] The Mann Act, 18 U. S. C. § 2421, provides: "Whoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose . . .

.          .          .          .

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

In construing this Act, we have held: "The statute thus aims to penalize only those who use interstate commerce with a view toward accomplishing the unlawful purposes. . . . An intention that the women or girls shall engage in the conduct outlawed by § 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement. And the transportation must be designed to bring about such result. Without that necessary intention and motivation, immoral conduct

The prosecutrix testified that petitioner agreed to take her to Tulsa where she could earn money by working as a prostitute with a woman called "Jane Wilson." Petitioner denied any intention on his part that the prosecutrix engage in such activity and testified, in effect, that her transportation was only an accommodation incidental to a business trip he was making to Oklahoma City, Oklahoma. Petitioner's dominant purpose for the trip was thus a sharply contested issue of fact which, on the evidence in the record, the jury could have resolved either way depending largely on whether it believed the prosecutrix or the petitioner. The Government placed "Jane Wilson" on the stand. In response to questions by the Assistant United States Attorney she swore that she was petitioner's wife and that she was a prostitute at the time petitioner took the prosecutrix to Tulsa. Not wholly satisfied with this testimony the prosecutor brought out for the first time on redirect examination that "Jane Wilson" had been a prostitute before she married petitioner. The mere presence of a wife as a witness against her husband in a case of this kind would most likely impress jurors adversely. When to this there is added her sworn testimony that she was a prostitute both before and after marriage we cannot be sure that her evidence, though in part cumulative, did not tip the scales against petitioner on the close and vital issue of whether his prime motivation in making the interstate trip was immoral. See *Krulewitch* v. *United States,* 336 U. S. 440, 444–445. At

---

during or following the journey is insufficient to subject the transporter to the penalties of the Act.

.　　　　.　　　　.　　　　.

". . . What Congress has outlawed by the Mann Act . . . is the use of interstate commerce as a calculated means for effectuating sexual immorality." *Mortensen* v. *United States,* 322 U. S. 369, 374–375. See *Cleveland* v. *United States,* 329 U. S. 14, 19–20. Cf. *Hansen* v. *Haff,* 291 U. S. 559, 563.

least, use of the wife's testimony was a strong suggestion to the jury that petitioner was probably the kind of man to whom such a purpose would have been perfectly natural.

*Reversed.*

MR. JUSTICE STEWART, concurring.

The rule of evidence we are here asked to re-examine has been called a "sentimental relic." [1] It was born of two concepts long since rejected: that a criminal defendant was incompetent to testify in his own case, and that in law husband and wife were one. What thus began as a disqualification of either spouse from testifying at all yielded gradually to the policy of admitting all relevant evidence, until it has now become simply a privilege of the criminal defendant to prevent his spouse from testifying against him. Compare *Stein* v. *Bowman,* 13 Pet. 209; *Wolfle* v. *United States,* 291 U. S. 7, 14; *Funk* v. *United States,* 290 U. S. 371. [2]

Any rule that impedes the discovery of truth in a court of law impedes as well the doing of justice. When such a rule is the product of a conceptualism long ago discarded, is universally criticized by scholars, and has been qualified or abandoned in many jurisdictions, it should receive the most careful scrutiny. [3] Surely "reason and experience" require that we do more than indulge in mere

---

[1] See Comment, Rule 23 (2) of the Uniform Rules of Evidence.

[2] We are not dealing here with the quite différent aspect of the marital privilege covering confidential communications between husband and wife. See *Wolfle* v. *United States,* 291 U. S. 7.

[3] Apparently some nineteen States have either abolished or substantially modified this privilege. See Note, 38 Va. L. Rev. 359, 365. In England the process has been a selective one, accomplished by legislation. See Evidence of Spouses in Criminal Cases, 99 Sol. J. 551. In 1938, the American Bar Association's Committee on Improvements in the Law of Evidence favored the abolition of the privilege on the part of the accused, 63 A. B. A. Rep. 595.

assumptions, perhaps naive assumptions, as to the importance of this ancient rule to the interests of domestic tranquillity.[4]

In the present case, however, the Government does not argue that this testimonial privilege should be wholly withdrawn. We are asked only to hold that the privilege is that of the witness and not the accused. Under such a rule the defendant in a criminal case could not prevent his wife from testifying against him, but she could not be compelled to do so.

A primary difficulty with the Government's contention is that this is hardly the case in which to advance it. A supplemental record filed subsequent to the oral argu-

---

[4] The facts in the present case illustrate how unrealistic the Court's basic assumption may be. At the time of the acts complained of the petitioner's wife was living apart from him under an assumed name. At the time she testified they were also living apart. In his testimony the petitioner referred to her as his "ex-wife," explaining when his counsel corrected him that he and his wife had never lived together very much.

Before assuming that a change in the present rule would work such a wholesale disruption of domestic felicity as the Court's opinion implies, it would be helpful to know the experience in those jurisdictions where the rule has been abandoned or modified. It would be helpful also to have the benefit of the views of those in the federal system most qualified by actual experience with the operation of the present rule—the district judges and members of the practicing bar. The Judicial Conferences of the several Circuits would provide appropriate forums for imparting that kind of experience. 28 U. S. C. § 333.

It is obvious, however, that all the data necessary for an intelligent formulation "in the light of reason and experience" could never be provided in a single litigated case. This points to the wisdom of establishing a continuing body to study and recommend uniform rules of evidence for the federal courts, as proposed by at least two of the Circuit Judicial Conferences. See Annual Report of the Proceedings of the Judicial Conference of the United States, September 18–20, 1957, p. 43. See Joiner, Uniform Rules of Evidence for the Federal Courts. 20 F. R. D. 429.

ment shows that before "Jane Wilson" testified, she had been imprisoned as a material witness and released under $3,000 bond conditioned upon her appearance in court as a witness for the United States. These circumstances are hardly consistent with the theory that her testimony was voluntary. Moreover, they serve to emphasize that the rule advanced by the Government would not, as it argues, create "a standard which has the great advantage of simplicity." On the contrary, such a rule would be difficult to administer and easy to abuse. Seldom would it be a simple matter to determine whether the spouse's testimony were really voluntary, since there would often be ways to compel such testimony more subtle than the simple issuance of a subpoena, but just as cogent. Upon the present record, and as the issues have been presented to us, I therefore concur in the Court's decision.