**UNITED STATES of America**

v.

**Joe Dee HICKS and Janet Earl Hicks et al.**

**Crim. No. CR 4–76–65.**

United States District Court, N. D. Texas, Fort Worth Division.

June 30, 1976.

Michael P. Carnes, U. S. Atty., Jay Ethington, Asst. U. S. Atty., Dallas, Tex., John W. Sweeney, Jr., Asst. U. S. Atty., Fort Worth, Tex., for plaintiff.

Lester L. May, Mark A. Troy, Jr., John Brunetti, Dallas, Tex., for defendants.

## MEMORANDUM AND ORDER

MAHON, District Judge.

There are now before the Court Defendants' "Motion to Dismiss Counts Three and Four of the Indictment" and "Motion for Separate Trial of Spouses." These motions came on for oral argument before the Court on 10 September 1976.

Defendants in this criminal action—Joe Dee Hicks, his wife, Janet Earl Hicks, and several others—have been indicted on various criminal charges under 21 U.S.C. §§ 846, 848, 952(a), & 960 and 18 U.S.C. § 2. Joe Dee Hicks is charged in four counts with importation of heroin and cocaine into the United States, aiding and abetting such importation, conspiracy, and continuing criminal enterprise. Janet Earl Hicks is charged in one count with conspiracy to violate 21 U.S.C. §§ 841(a)(1), 952, & 960.

Though the trial of this case originally involved a large number of Defendants, many of the original Defendants have plead guilty and are no longer set for trial. At the time of the hearing on the motions now in question, six Defendants remained set for trial in a single proceeding.[1]

## I

Relying on *United States v. Lember*, 319 F.Supp. 249 (E.D.Va.1970), Defendant Joe Dee Hicks argues that counts three and four of the indictment, charging him with importation of narcotics, are not continuing crimes, but were complete when the narcotics arrived ashore and were opened. He therefore claims that venue is proper only in those districts where the narcotics arrived, not in the Northern District of Texas where the alleged conspiracy to import and distribute the narcotics occurred and to which the narcotics allegedly eventually traveled.

At least one circuit has considered *Lember, supra*, and specifically rejected it. *United States v. Jackson*, 482 F.2d 1167, 1178–1179 (10th Cir. 1973). Three circuits have now held the crime of importation to be a continuing offense subject to multiple venue. *United States v. Lawson*, 507 F.2d 433, 445 (7th Cir. 1974); *Jackson, supra*; *United States v. Barnard*, 490 F.2d 907, 910–911 (9th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). There appears to be no case other than *Lember* holding that importation is not a continuing offense.

 This Court is persuaded by the logic of the cases holding that importation is a continuing offense. 18 U.S.C. § 3237(a) provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

---

1. There are additionally four Defendants still unapprehended at this time.

Any offense involving use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

As stated in *Barnard, supra,* 490 F.2d at 911:

As it relates to the second paragraph of 18 U.S.C. § 3237(a), the crime of importation of marijuana obviously involves both "transportation" and "foreign commerce." Thus by statute Congress has defined this crime as a "continuing" one. Congress has also explicitly provided that prosecution may be had in "any district from, through . . . which such commerce . . . moves."

Accordingly, the Court is of the opinion that Defendant Joe Dee Hicks's "Motion to Dismiss Counts Three and Four of the Indictment" should be denied.

## II

In their motion for separate trials, Defendants Joe Dee Hicks and Janet Earl Hicks urge that they should be accorded separate trials, since to try both of them in the same action would limit each Defendant's privilege to keep his spouse from testifying. Defendants contend that the marital privilege is a constitutional right similar to the right to testify in one's own behalf, and that by trying both Defendants together, this Court would deprive Defendants of their constitutional rights.

■ As a starting point, the Court notes that the marital privilege in federal court is a common-law rule of evidence designed to protect certain interests. It is a matter of policy, not a constitutional right. As set forth in *Hawkins v. United States,* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), the leading case on the marital privilege in the federal system:

The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well.

358 U.S. at 77, 79 S.Ct. at 138. As an evidentiary rule, the marital privilege could be altered at will by either Congress[2] or, in the absence of legislation, by the Supreme Court, should it be determined that the privilege no longer served the policy. *Hawkins,* 358 U.S. at 78, 79 S.Ct. 136. Indeed, the several states have legislated or ruled into force many different types of marital privileges, and, in a few jurisdictions, have abrogated the privilege altogether. *See* 8 Wigmore, *Evidence* §§ 2332–2341 (McNaughton rev. 1961); Comment, *The Husband-Wife Privileges of Testimonial Non-Disclosure,* 56 Nw.U.L.Rev. 208, 231 (1961). The various jurisdictions of these United States may treat the marital privilege so diversely simply because the evidentiary rule is one founded in policy and not in the Constitution. Ladd, *Privileges,* 1969 Law & Soc. Order 555, 558–559 (1969).

■ Where only one spouse is a defendant in a criminal action, but the prosecution seeks to call the other spouse as a witness, the federal rule is that either the defendant spouse or the witness spouse may claim the marital privilege to prevent the witness spouse from testifying altogether. *United States v. Doughty,* 460 F.2d 1360, 1364 (7th Cir. 1972); *United States v. Fields,* 458 F.2d 1194, 1198–1199 (3d Cir. 1972). But a spouse is competent to testify on behalf of a defendant spouse if both are willing for him to do so. *Hawkins, supra*; *Funk v. United States,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933).

■ There is, unfortunately, a dearth of caselaw and a conflict of theory in the situation where both spouses are co-defendants. Weighing against the policy in favor of the sanctity of the marriage in this situa-

2. *See* the excellent discussion of Supreme Court Standard 505 (proposed Federal Rule of Evidence rejected by Congress) in 2 Weinstein & Berger, *Evidence* ¶¶ 505[01]–505[05] (1975).

tion is the desirability in criminal conspiracy cases to have all the defendants together before a single jury. Separate trials are more difficult to prosecute, more expensive, and more time consuming than a joint trial, and, thus, not to be granted as a matter of right, but only where a reasonable prospective evaluation of the evidence indicates that one of the codefendants at the joint trial will be prejudiced by the defense offered by another. *United States v. Harris*, 458 F.2d 670 (5th Cir. 1972); *United States v. Andreadis*, 238 F.Supp. 800 (D.C.N.Y. 1965). *See* Note, *Marital Privileges and the Right to Testify*, 34 Chi.L.Rev. 196, 207–208 & n. 48–52 (1966) [hereinafter "Note, *Marital Privileges* "].

Judge Weinstein's excellent *Commentary on Rules of Evidence for the United States Courts and Magistrates* adopts the ultimate conclusion proffered in Note, *Marital Privileges, supra*, that a court should automatically sever any trial involving a husband and wife as codefendants. Weinstein & Berger, *Evidence* ¶ 505[04] (1975). Automatic severance, of course, avoids the problems inherent in weighing the policy behind the marital privilege, but it ignores altogether the issues of casting a greater burden on the prosecution and wasting judicial resources. The student commentary relied on in Judge Weinstein's treatise is quite enlightening on this point. Note, *Marital Privileges, supra*, recognizes the normal policy opposing separate trials in criminal conspiracy cases, 34 Chi.L.Rev. at 207–208, but concludes that this policy is outweighed by (1) possible prosecutorial misuse in indicting one spouse for the sole reason of frightening him into testifying against his co-defendant spouse, and (2) possible judicial waste in forcing the trial judge to make speculative factual decisions that raise the possibility of reversal on appeal. 34 Chi.L. Rev. at 210. Of the three alternatives hypothesized, the commentary concludes that automatic granting of severance is the best.

Note, *Marital Privileges, supra*, however, did not consider the possibility of carrying along the defendant's motion for continuance into trial until the close of the government's case. By so doing, the Court avoids both of the pitfalls that bothered the student commentator. The Court would at that time be in a far better position to determine what evidence would actually be offered by the co-defendant spouses. And it would be apparent by that time whether the government's case against the conspiratorial spouse was one founded on solid evidence of conspiracy or, instead, a simple coercive joinder for the sake of eliciting testimony. There is ample precedent for denying a pretrial motion for severance without prejudice to renewing the motion at trial if the Court would be in a better position to determine the motion at that time. *See* Wright, *Federal Practice & Procedure* § 221 at 434 (1969) & cases gathered therein at 434–435 n. 10–11 (1969 & Supp. 1975).

The facts in the present case present an excellent example of why this alternative course should be adopted. Defendants have argued that a severance should be granted simply because of the fact that there are co-defendant spouses in this case. Defendants have made no attempt to set forth any of the substance of the testimony that might be offered, *or even to state whether either Defendant will in fact testify.* Noting this omission is not meant to be critical of Defendants' counsel. It is quite often the case that until the government has presented its evidence, counsel for a criminal defendant will not know whether it is advantageous for his client to take the stand or, if he does, on what matters it will be necessary for his client to testify. One of the complaints of Defendants' counsel in this action is that they do not know to what Janet Earl Hicks may have to testify, because the indictment charging her with conspiracy lists no overt acts.

We now turn to a consideration of what will be the grounds for severance of co-defendant spouses when, at the close of the government's case, it becomes necessary for this Court to rule on the motion. Defendants urge that the mere fact that one or both co-defendant spouses might testify in their own behalf is sufficient to require a

severance. Otherwise, Defendants argue, they will be denied their marital privilege. The Court does not agree.

■ As set forth above, the marital privilege is a common-law evidentiary rule designed to further a certain social policy; it is not a constitutional right. The social policy involved is that of fostering marital peace. *Hawkins, supra*, 358 U.S. at 77, 79 S.Ct. 136. Accordingly, the relevant inquiry for the Court is whether the testimony sought to be proffered by the testifying co-defendant spouse is of the sort that would destroy whatever harmony exists between the spouses *Doughty, supra*, 460 F.2d at 1364; *United States v. Van Drunen*, 501 F.2d 1393, 1396–1397 (7th Cir. 1974), *cert. denied*, 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974); *United States v. Armstrong*, 476 F.2d 313, 315 (5th Cir. 1973).

It is clear that if one spouse, in attempting to exculpate himself, offers evidence in any manner adverse to his co-defendant spouse, the result would "be likely to destroy almost any marriage." *Hawkins, supra*, 358 U.S. at 78, 79 S.Ct. at 138. The Supreme Court has also noted that "[t]he mere presence of a wife as a witness against her husband in a case of this kind would most likely impress jurors adversely." *Hawkins, supra*, 358 U.S. at 80, 79 S.Ct. at 140. Thus it is clear that there may be situations in which the testifying co-defendant spouse does not give testimony exactly inconsistent with his spouse's position, but where the jury might weigh such testimony, in light of the marital relationship, adversely to the non-testifying spouse. In such a case, if the non-testifying spouse opposed the other's becoming a witness, marital disharmony could well result.

Testimony that, if believed, exculpates both spouses, however, can not create marital disharmony; even if admitted in error, it is harmless. *United States v. Fields*, 458

F.2d 1194, 1198–1199 (3d Cir. 1972). Where one spouse takes the stand in his own behalf, only to offer mutually exculpatory testimony, the Court can, therefore, in its discretion, by weighing the fact that no harm is likely to result to the marital relationship against the likelihood of prejudice to the prosecution and waste of judicial resources, deny severance.

■ Moreover, the marital privilege only extends to a prohibition of spousal testimony, not to a choice of who one's co-defendants might be.[3] The privilege is intended only to protect marital harmony and cannot be bootstrapped into providing the co-defendant spouses more protection than ordinary defendants who do not want their spouses to testify.

■ Accordingly, if after the prosecution presents its case, Defendants still move for a severance because one spouse plans to take the stand in his own behalf and the other objects on the grounds of marital privilege, and if the Court determines that the claim of privilege is properly taken, the objecting spouse would be barred in his separate trial from waiving the objection and calling the other spouse as a witness in his behalf.

The reason for forcing this election and for closely examining the claim of marital privilege, is to keep defendants from bootstrapping a severance to protect marital harmony into a severance for the sake of encumbering the prosecution. This bootstrapping is a real possibility in the present case. Defendants have filed several motions for severance of both counts and Defendants. Defendant Joe Dee Hicks had previously moved to sever his continuing criminal enterprise count from his remaining counts, and the other Defendants all moved to sever their trial from that of Defendant Joe Dee Hicks on the ground

---

**3.** It is widely recognized that juries are likely to be influenced, in criminal conspiracy cases, by the fact that the co-defendant accused conspirators are husband and wife. *See* the opinion of Chief Judge Traynor in *People v. Pierce*, 61 Cal.2d 879, 882, 40 Cal.Rptr. 845, 847, 395 P.2d 893 (1964). The marital privilege, however, is an evidentiary rule only, designed to protect marital harmony, not to protect against prejudice. Moreover, the marital status of the co-defendants is a proper and relevant fact before the jury in considering whether a conspiracy existed.

that he was the only one charged with continuing criminal enterprise. These motions were denied by Order of this Court of 25 August 1976.[4] Two Defendants only had previously moved to fix the place of trial at Dallas, Texas, a motion which this Court granted with respect to all Defendants. At oral argument on Defendants' "Motion to Dismiss Counts Three and Four of the Indictment," which would have meant the re-indicting two of the counts against Defendant Joe Dee Hicks in Hawaii and Florida, counsel for Defendant Joe Dee Hicks admitted there was no practical reason for wanting to go to trial in such distant states and confessed that they were simply trying to make it more difficult for the prosecution.

Because of the countervailing policies of not unduly encumbering the prosecution and of preserving judicial resources, the Court is of the opinion that the marital privilege should be limited to the social policy it purports to further.

In sum, the Court is of the opinion that the following procedure should be adopted:

(1) Either one or both of the co-defendant spouses must claim the marital privilege;

(2) The motion for relief from prejudicial joinder will not be ruled on until it becomes certain that one of the co-defendant spouses will take the stand, be that at some time prior to trial on the merits, after the completion of the prosecution's case, or even into the presentation of the defense;

(3) At such time as the motion is ruled on, the Court must determine that the motion is not frivolous—that is, that the testimony of the testifying spouse, either that on direct or that likely to be elicited on cross, will be of such a nature that it would harm the marital relationship; and

(4) The defendant spouse claiming the privilege will be barred from asserting a contradictory position in the separate trials.

### III

Accordingly, the Court ORDERS that Defendant Joe Dee Hicks's "Motion to Dismiss Counts Three and Four of the Indictment" be hereby denied. The Court further ORDERS that Defendants Joe Dee Hicks's and Janet Earl Hicks's "Motion for Separate Trial of Spouses" be hereby denied without prejudice to renewing the motion at trial, after the completion of the prosecution's case, out of the presence of the jury.

---

4. *See United States v. Cravero*, 536 F.2d 637 (5th Cir. 1976); *United States v. Sperling*, 506 F.2d 1323 (2d Cir. 1974); *United States v.* *Manfredi*, 488 F.2d 588 (2d Cir. 1973); *United States v. Collier*, 358 F.Supp. 1351 (E.D.Mich. 1973).