**James Edward YOUNG,
# 87875, Petitioner,**

v.

**STATE OF OKLAHOMA and Dr. Ned Benton, Director, Department of Corrections et al., Respondents.**

**No. CIV–76–0494–D.**

United States District Court,
W. D. Oklahoma.

Sept. 20, 1976.

James E. Young, pro se.

Larry Derryberry, Atty. Gen. by Paul Crowe, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

### ORDER

DAUGHERTY, Chief Judge.

This cause is before the court on the Petition of James Edward Young for Writ

of Habeas Corpus. The petitioner is serving a sentence of 38 years imprisonment for the crime of Robbery With Firearms After Former Conviction of a Felony imposed by the District Court of Oklahoma County, State of Oklahoma, case No. CRF–73–3731 after the petitioner had been found guilty by a jury. The respondents have filed their Response by and through the Attorney General of the State of Oklahoma and submitted to this court the original record including the transcript of trial in said criminal case. ·

The petitioner contends that he is unlawfully detained because his constitutional rights were violated as follows:

1. The in-court identification of the petitioner was tainted by a pretrial lineup in the absence of counsel.

2. Evidence of the lineup identification was per se inadmissible because the petitioner was without counsel.

3. The trial court erred in failing to conduct sua sponte an in camera hearing concerning the lineup identification.

4. "The trial court erred by allowing the prosecutor to introduce evidence of other crimes not charged in information CRF–73–3731."

5. "It was reversible error for the trial court to allow the prosecutor to coerce defendant's wife to testify against him."

6. "The defendant was denied effective assistance of counsel at trial and appellate level in this instance cause."

Following petitioner's conviction and the imposition of sentence he perfected a direct appeal to the Oklahoma Court of Criminal Appeals. Therein the contentions which he now advances in this court were considered by the Oklahoma appellate court and determined adversely to him on February 14, 1975. *Young v. State*, 531 P.2d 1403. Since then the petitioner has filed two unsuccessful applications in the State courts for post conviction relief and respondents concede that the petitioner has exhausted the remedies available to him in the courts of the State of Oklahoma.

The key question presented by the petitioner in his first two propositions is whether he was entitled to counsel at the time of the lineup. The controlling facts on this issue are not in dispute. The robbery occurred on December 18, 1973. On December 25, 1973, the petitioner was arrested on outstanding Arrest Warrants for driving under the influence of intoxicating liquor and no State Driver's License. On December 26, 1973, the petitioner was placed in a formal lineup without counsel with four other persons and identified by the robbery victim. Thereafter, an Information was filed charging the petitioner with the instant offense. At the trial the victim made a courtroom identification and testified to the lineup identification. The petitioner admitted in his testimony at trial that he agreed to participate in the lineup. (Tr. 58.)

It is the rule that the Sixth and Fourteenth Amendments right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated and a person is not entitled to counsel at a lineup where he has not been charged by Information, Complaint or any other formal accusation. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Harris v. Turner*, 466 F.2d 1319 (C.A.10 1972). The petitioner contends that the rule should not apply in this case because he had been arrested and was in custody after formal charges of the traffic offenses had been filed. He fails to distinguish between the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel. The issue is not whether he was in custody but whether the lineup was a "critical stage" in his prosecution on the robbery charge. *Kirby* makes clear that it was not. The Court in its decision reviewed the principal right to counsel cases and pointed out:

". . . All of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." 406 U.S. at 689, 92 S.Ct. at 1882.

In *United States v. Davis*, 399 F.2d 948, 951 (C.A.2 1968), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449, prior to *Kirby* that court provided this clarifying analysis:

". . . We do not read *Wade* and its siblings as saying that the mere fact of custody, especially when this is for an unrelated crime, automatically triggers the Sixth Amendment right to counsel, as it would the Fifth Amendment privilege against self-incrimination. The importance of custody from a Fifth Amendment standpoint is that it is conceived as furnishing the element of compulsion which that Amendment demands, see *Miranda v. State of Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The protection of the Sixth Amendment applies to 'the accused' in 'all criminal prosecutions,' and while *Wade* [*U. S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] makes clear that this includes certain pretrial proceedings, 388 U.S. at 224–225, 87 S.Ct. 1926, that is a long way from saying that the protection attaches as soon as suspicion is aroused. The fact of custody adds little of Sixth Amendment relevance, especially when, as here, this is for an unrelated crime."

None of the events mentioned by the *Kirby* court had occurred to the petitioner with respect to the crime here at issue. Moreover in this case the victim had not made a photographic identification of the petitioner and prior to the lineup there was not probable cause to charge the petitioner with the robbery. The identification of the petitioner by the victim was a prerequisite to the charge. In no proper sense had the petitioner become the accused or the prosecution against him for this offense commenced. But cf. *Thomas v. Leeke*, 393 F.Supp. 282 (D.S.C.1975).

■ The petitioner also suggests that a different rule should apply in his case because he alleges, contrary to the record, that he had requested counsel. Disregarding any question of waiver and that he voluntarily agreed to stand in the lineup, the court finds no merit to this contention. Since the petitioner had no right to counsel at the lineup his request could not of itself create a right to counsel which did not otherwise exist. In *Moore v. Eyman*, 464 F.2d 559 (C.A.9 1972) the court held that the habeas petitioner was not entitled to relief on the ground that his conviction was based on identification by eyewitness at lineup at which he had requested but was denied counsel where the lineup occurred prior to indictment or other initiation of adversary judicial proceedings.

■ The petitioner's assertion that the trial court should have sua sponte conducted a hearing outside the presence of the jury concerning petitioner's identification by the robbery victim is without merit. Here there was no motion to suppress any identification evidence and no objection to any testimony either concerning the lineup identification or the in-court identification. The initiative rested with the petitioner and not with the judge and there was no constitutional error in not conducting an in camera hearing. *Taylor v. Swenson*, 458 F.2d 593 (C.A.8 1972). Cf. *Garrison v. Patterson*, 405 F.2d 696 (C.A.10 (1969). The victim at petitioner's preliminary hearing indicated the robber had a "cracked right tooth". At the trial defense counsel asked her to look in petitioner's mouth and then in response to his question she observed that he did not have the flawed tooth. The petitioner maintained that:

"Then and there, the trial court should have taken judicial notice that the prosecutrix had made an erroneous identification and, sua sponte, held an in camera hearing for the purpose of excluding prejudicial matter from the jury's consideration."

The petitioner misconceives the nature of the protection afforded him by the Constitution. The constitutional guaranty is not against mistaken identity but against procedures which offend the Sixth Amendment right to counsel or the Fifth Amendment right to due process. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and its progeny do not establish a rigid requirement for a hearing to determine the independent origin of an

in-court identification. It is not the possibility of mistaken identity which triggers the hearing requirement. Such a hearing is required when the lineup has been determined to be illegal either because of lack of counsel when required or because of allegations of suggestiveness. There was nothing before the court to suggest any improper procedures. The testimony of the victim and the officer who conducted the lineup affirmatively reflected that there was no impermissible suggestiveness at the confrontation. The lineup consisted of five persons who were approximately the same height, weight and age. The testimony of the victim amply supports the conclusion that she had sufficient opportunity to observe the petitioner at the time of the robbery and that it was from her observations at that time that she was able to make the in-court identification. The petitioner admitted at trial that her initial description to police pretty well fit him. (Tr. 69.) Defense counsel thoroughly cross-examined the victim and the officer in an apparent effort to detect any flaws in the identification procedures. His cross-examination under the circumstances was adequate to probe the validity of the identification procedures without resorting to an evidentiary hearing outside the presence of the jury. *United States v. Mason*, 440 F.2d 1293 (C.A.10 1971), cert. denied, *Edwards v. United States*, 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165.

█ The petitioner now makes a weak allegation, "on information and behalf [sic]", that the victim first identified at the lineup another individual with a cracked tooth but that the officer told her that she had the wrong man and that on a second view she pointed out the petitioner. This is not supported by the victim's testimony at trial and, in fact, is inconsistent therewith since at trial she still believed that the robber had a flawed tooth and it is incredible to believe that if she had picked out someone with a bad tooth at the lineup that she would have switched to another without the supposed identifying characteristic. Further, it is fully rebutted by the officer's

testimony at the trial that after the lineup he took the victim back to his office:

"Q. All right, sir. Now, would you tell me what you did after the line-up was over?

A. Yes, sir. I asked her if there was anyone in the line-up that had pulled the armed robbery and she said that there was. I told her to be positively sure, because this man's life was in jeopardy, his—could go to the penitentiary for it. She said it was without doubt Mr. Young that pulled the hijacking." (Tr. 48.)

Absent disclosure of the basis for his allegation, it amounts to no more than a naked assertion. A "naked assertion without any background factual substantiation whatsoever" is insufficient. *Midgett v. Warden*, 329 F.2d 185, 187 (C.A.4 1964).

█ The petitioner's complaint about the prosecutor asking him if he was convicted of petty theft in 1958 in California is not of constitutional dimensions. The Oklahoma Court of Criminal Appeals aptly pointed out that there was nothing in the record to indicate the prosecutor was "creating" a crime to prejudice the jury against the petitioner and moreover, that in view of the fact that petitioner on direct examination admitted two prior felony convictions there could have been no real prejudicial effect. Certainly merely asking the questions as he did would not constitute that sort of flagrant misconduct on his part necessary to establish a denial of constitutional due process for relief on collateral attack. See *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

█ The petitioner's allegations concerning the evidence of his arrest on traffic warrants do not raise a federal constitutional question. The error, if any, was merely a trial error not reviewable in federal habeas. *Pierce v. Page*, 362 F.2d 534 (C.A.10 1966). Errors committed by the trial court with respect to the admission of evidence can only be reviewed by appeal. *Carrillo v. United States*, 332 F.2d 202 (C.A.10 1964); *Alexander v. Daugherty*, 286 F.2d 645 (C.A.10 1961); *Schechter v. Waters*, 199

**294**

F.2d 318 (C.A.10 1952). See also *Peterson v. Tinsley*, 331 F.2d 569 (C.A.10 1964).

 At the trial the petitioner testified that he was home with his wife at the time of the robbery. In rebuttal the State called the wife who testified that on the evening of the robbery the defendant left her in a bar around 5:00 p. m. and he did not return home until about 11:00 or 11:30 p. m. (Tr. 72.) The petitioner had unsuccessfully sought to have her verify his alibi. (Tr. 76.) The petitioner does not allege that his wife perjured herself but only that she was "coerced" into testifying for the State. The witness refused to state at trial that she was forced to testify by the District Attorney. (Tr. 75.) Although obviously a reluctant witness the wife testified that she was unwilling to go to jail to protect her husband by lying and that she just wanted to tell the truth which was that he was not at home watching television on the night in question. (Tr. 76, 77.) The petitioner's argument that his wife's testimony was inadmissible under the Oklahoma Statutes is not available in this court. It was rejected by the Oklahoma Court of Criminal Appeals which held that his failure to object at trial foreclosed the question on appeal but that in any event he had waived any privilege by taking the stand and testifying as to conversations had with his wife pertinent to the issue. This court is bound by the Oklahoma Court's interpretation of its own State statutes. *Redford v. Smith*, 543 F.2d 726 (C.A.10 1976). There is no federal constitutional bar to a spouse testifying in a prosecution against the other. *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958).

 The petitioner's claim that he had an ineffective trial counsel rests upon allegations that counsel was intoxicated throughout the trial and negligent in protecting petitioner's rights. This issue was presented to the trial court in a pro se Motion for New Trial and considered on direct appeal. The Findings of Fact and Conclusions of Law made by both the trial court and the appellate court are set forth in the Appellate Opinion as follows:

"The defendant's final proposition of error asserts incompetent counsel. The defendant contends under this proposition that his defense attorney was intoxicated throughout the trial. At the hearing on the motion for new trial when this contention was argued, the trial court made the following statement".

'And in connection with that, let the Court state that the Court observed the conduct of the trial and the conduct of Mr. Neal. The Court is of the opinion that Mr. Neal conducted himself properly in all matters and did not appear to be incapacitated to any degree whatsoever, and to his knowledge, Mr. Neal is competent, dedicated and concerned in this matter and put forth every effor (sic) possible in this matter. At no time did the Defense Counsel, Mr. Neal, appear to be incapacitated to any degree at all.' (Tr. 92)

"After a careful review of the record we concur with the trial court's findings set out above. This Court, in the case of *Jones v. State*, Okl.Cr., 513 P.2d 1402 (1973), stated:

'As a general rule, relief upon a final conviction on the ground of ineffective counsel will be granted only when the trial is a farce or mockery of justice, or is shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.' at 1403.

In the instant case we observe that the defendant's court appointed counsel at the trial was a duly licensed member of the Oklahoma Bar, qualified by training and experience to protect the rights of an accused in a criminal proceeding. It is therefore our opinion that the petitioner's allegation of ineffective counsel is completely without merit." 531 P.2d at 1407.

These findings are presumptively correct. 28 U.S.C. § 2254(d). The trial court certainly was able to observe first hand the actions and conduct of counsel and to be aware if

he was intoxicated. This court has carefully reviewed the trial transcript and the record supports the findings and conclusions of the Oklahoma courts concerning the quality of the representation received by petitioner. The case was basically very simple. The jury was called upon either to believe the identification by the robbery victim or to accept petitioner's alibi. Defense counsel thoroughly cross-examined the State's witnesses to probe any weaknesses in the identification. He carefully developed the point that the robber had a "flawed tooth" and the petitioner at trial did not. The defense might have been successful if petitioner's wife had not shattered his alibi. The Oklahoma Court of Criminal Appeals applied the correct legal criteria to counsel's representation and this court agrees the trial was in no sense a mockery, sham or farce. See *Basker v. Crouse*, 426 F.2d 531 (C.A.10 1970).

The petitioner's complaints about his appellate counsel are equally without merit. It appears that Public Defender handling the appeal for the petitioner carefully followed the procedure prescribed in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The petitioner was furnished a copy of the Brief, then was able to argue in his own pro se Brief such additional points as he wished the Court of Criminal Appeals to consider. The court itself as shown by its Opinion did not after full review find any additional legal points arguable. Certainly, if it had it would have appointed counsel to argue the appeal. We cannot assume that the court failed to carry out its constitutional duties as interpreted in *Anders*. We cannot conclude from petitioner's allegations or from the records before us that the Public Defender did not proceed as an advocate for the petitioner on the appeal. There is no duty upon appellate counsel to urge legally unsupportable matters and merely because counsel did not urge in the appellate court those points which the petitioner in his pro se brief deemed worthy of consideration does not establish a denial of effective assistance of appellate counsel.

As evidenced by the foregoing analysis there is no requirement for an evidentiary hearing in this court and the Petition for Writ of Habeas Corpus will be denied.

IT IS SO ORDERED.