The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Emilio J. **LUCERO,** Defendant-Appellant.

No. 83CA0397.

Colorado Court of Appeals, Div. III.

May 30, 1985.

Rehearing Denied July 18, 1985.

Certiorari Granted Oct. 21, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes Horton, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Seth J. Benezra, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

The defendant, Emilio Lucero, appeals his conviction of attempted robbery of the elderly, and conspiracy to commit robbery of the elderly. His primary contention is that the trial court erred by admitting testimony which should have been excluded on the basis of the defendant's assertion of marital privilege. We reverse and remand for a new trial.

The defendant asserts that the trial court erred by admitting into evidence the testimony of his common-law wife, despite his assertion of marital privilege pursuant to § 13–90–107(1)(a), C.R.S. (1984 Cum.Supp.). We agree.

■ Section 13–90–107(1)(a) provides that: "[A] husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent. . . ." This section requires the existence of a valid marriage before its privilege can be invoked. *See People v. Maes*, 43 Colo.App. 365, 609 P.2d 1105 (1979).

■ A common-law marriage occurs when the parties: 1) present a consent to be husband and wife, and 2) a mutual and open assumption of the marital relation-

ship.  H. Clark, *Law of Domestic Relations* § 2.4 (1968).  If the existence of the contract or agreement is denied or cannot be shown, then that fact may be proven by, or presumed from, the evidence of cohabitation as husband and wife and general repute.  *Graham v. Graham*, 130 Colo. 225, 274 P.2d 605 (1954).

■ Here, the witness testified that she and defendant had lived together for approximately five years between 1976 and 1981, and that one child, Emilio, Jr., had been born of that relationship.  She stated that she considered herself married to defendant, and that, in her opinion, he agreed that a marriage existed.  She also testified that they held themselves out to friends as being married to one another.  The record also shows that shortly after his arrest, defendant had told police officers that he had "loaned his common-law wife's car" to a co-defendant on the day of the robbery.

Without making any credibility determination, the trial court found that there was no proof of a marital relationship between the parties.  Although the record is unclear as to the period of time when the court found that no marriage existed, we conclude that the uncontradicted evidence establishes, as a matter of law, the existence of a common-law marriage which had not been dissolved.  *See In re Marriage of Lester*, 647 P.2d 688 (Colo.App.1982).

■ The witness' testimony addressed both elements of a common-law marriage, showing both the parties' mutual consent to be married and their open assumption of a marital relationship.  Since there was no dispute as to the existence of the common-law marriage, the lack of testimony concerning repute is irrelevant.  Thus, the court's refusal to permit invocation of the marital privilege was reversible error.

Relying on *Trammel v. U.S.*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the People argue that even if a valid common-law marriage had been established, the privilege should be construed narrowly and the trial court's ruling should be upheld. We decline to do so.

In *Trammel, supra,* the court held that in federal criminal prosecutions, the witness-spouse alone may invoke the marital privilege, thus modifying the rule established in *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958) that the testimony of one spouse against the other is barred unless both consent. However, § 13–90–107(1)(a), C.R.S. (1984 Cum.Supp.), "perpetuates the common-law doctrine of witness disqualification in the case of non-consensual spousal testimony regardless of its content." *People v. Corbett*, 656 P.2d 687 (Colo.1983) (Quinn, J., concurring). *See also Trammel v. U.S., supra* (fn. 8).

■ Thus, we conclude that § 13–90–107(1)(a), C.R.S. (1984 Cum.Supp.), provides an absolute privilege and that the trial court erred in allowing defendant's wife to testify over his objection.

Defendant's other contentions of error are without merit.

The judgment is reversed and the cause is remanded for a new trial.

TURSI, J., concurs.

STERNBERG, J., dissents.

STERNBERG, J., dissenting.

The trial court found that the evidence presented did not prove the existence of a marital relationship between the parties. Looking at the same evidence, the majority concludes that such relationship was demonstrated as a matter of law.  In my view, the evidence presents a factual issue, the resolution of which is solely within the province of the trial court.  *See Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970).

The existence of a common-law marriage in this case is based solely on the testimony of one witness: the putative wife, Rosemary Trujillo.  In my view, the majority ignores the fundamental principle that a fact finder need not accept even uncontradicted testimony as true.  *Pioneer Construction Co. v. Richardson*, 176 Colo. 254, 490 P.2d 71 (1971).  Thus, even if the witness' testimony had addressed all elements

of a common-law marriage, the trial court could have properly rejected it.

Rosemary Trujillo testified that she and the defendant were living together, that they had a child, and that the parties had held themselves out as married. However, such testimony is insufficient basis upon which to rule that, as a matter of law, a common-law marriage was demonstrated. Noticeably lacking is testimony as to proof of general repute, without which there can be no valid common-law marriage. *See Graham v. Graham*, 130 Colo. 225, 274 P.2d 605 (1954).

Also, the trial court's factual determination that no marriage existed is consistent with the witness' testimony that both she and the child were known by her surname. And, the witness revealed a lack of understanding of the elements necessary to create a common-law marriage by her testimony that what she meant by the fact that she and defendant "were common-law" was that they were living together. In this respect, the trial court did not share her misunderstanding of the law, and neither should we. Cohabitation alone is insufficient to establish a valid common-law marriage. *In re Estate of Danikas*, 76 Colo. 191, 230 P. 608 (1924).

Proof of general repute sufficient to establish a common-law marriage means the understanding among neighbors and acquaintances with whom the parties associate in their daily life, it is made up of social conduct and recognition giving character to an admitted and unconcealed condition. *Graham v. Graham, supra.* It is necessary that there be evidence of both cohabitation and reputation before a marriage can be presumed. *Graham v. Graham, supra; Estate of Klipfel v. Klipfel*, 41 Colo. 40, 92 P. 26 (1907).

No witnesses testified as to their understanding of the parties' relationship, or to the parties' reputation of being married, and no other evidence showing a reputation of marriage was offered. Therefore, with no proof of reputation, a common-law marriage could not be presumed.

The trial court found, on supporting evidence, that there was no common-law marriage; therefore, the court concluded the relationship between the witness and the defendant was insufficient to invoke the marital privilege. This question of existence of the privilege is for the trial court's determination. CRE 104. That court's finding, being supported by the evidence, should be affirmed.

For these reasons I respectfully dissent from the majority opinion. I would affirm the conviction.