**STATE of Indiana, Appellant–Plaintiff,**

v.

**Paul L. ROACH, Appellee–Defendant.**

**No. 38A02–9601–CR–1.**

Court of Appeals of Indiana.

Aug. 5, 1996.

Pamela Carter, Attorney General, Geoffrey Slaughter, Deputy Attorney General, Indianapolis, for appellant–plaintiff.

**OPINION**

FRIEDLANDER, Judge.

Paul L. Roach was charged with Battery [1], a class A misdemeanor, for allegedly beating his wife Brenda L. Roach and causing bodily injury to her. After the trial court entered a judgment acquitting Roach of the charge, the State brought this appeal. This court has jurisdiction to hear this case pursuant to Ind.Code § 35–38–4–2(4) (West 1986) and Rule 4(A) of the Indiana Rules of Appellate Procedure.[2]

We hold that the trial court erred in determining that the spousal testimonial privilege rule applied to the facts of this case. Rule 501 of the Indiana Rules of Evidence does not justify the creation of an "adverse spousal testimony privilege" not heretofore recognized in Indiana state courts.

---

1. Ind.Code § 35–42–2–1(a)(1) (West Supp.1995).

2. The State acknowledges that double jeopardy precludes the retrial of Roach for this offense.

Brenda gave a written sworn statement on September 12, 1994, detailing the offense and the history of problems she had experienced with her husband.

Brenda also signed a battery affidavit that stated:

Paul Roach struck Brenda Roach in the mouth with his fist causing pain to Brenda's mouth. Paul also grabbed Brenda by the hair of the head and right arm which touching resulted in bodily injury to Brenda L. Roach.

I understand that the investigating officer is relying upon my allegations set fourth [sic] in this affidavit as establishing Probable Cause for the arrest of the defendant on the charge of Battery under IC 35–42–2–1.

*Record* at 7.

In addition, Brenda signed an affirmation which stated:

I affirm under the penalties for perjury that the foregoing representations are true. I further understand the provisions of the false informing statute and declare I am reporting a crime.

*Record* at 7.

Brenda was the sole witness called by the State at Roach's trial. After stating her name and address for the record, Brenda refused to testify against her husband. The trial court refused to compel Brenda to testify and found that she had not waived her right to assert the adverse spousal testimonial privilege. After the State rested its case, the trial court granted Roach's motion for judgment on the evidence and entered a judgment of acquittal.

The State now appeals, raising three issues which we renumber and restate:

I. Did the trial court err in permitting Brenda to invoke the spousal testimonial privilege?

II. Did the trial court err in refusing to compel Brenda's testimony because the substance of her testimony falls outside the spousal testimonial privilege?

III. Did the trial court err in finding that Brenda had not waived her right to invoke the spousal testimonial privilege?

## I.

 The trial court erred in refusing to compel Brenda to testify against her husband on the basis of the spousal testimonial privilege. The spousal testimonial privilege is not recognized under Indiana state law. The creation of such a privilege is best left to the legislature and not the courts.

In response to the State's request for a pre-trial ruling, the trial court determined that it would not compel Brenda to testify in the absence of a showing that she had waived the "adverse spousal testimonial privilege". In making this determination, the trial court looked to federal law for guidance and relied upon the similarity in language between Rule 501 of the Federal Rules of Evidence and Rule 501 of the Indiana Rules of Evidence to justify the creation of a privilege not theretofore recognized in Indiana state courts.

 Indiana generally recognizes that privileges are statutory in nature and that it is within the power of the legislature to create them. *Terre Haute Regional Hosp. v. Trueblood,* 600 N.E.2d 1358 (Ind.1992). Because privileges are in derogation of the search for truth and because most privileges were unknown at common law, they are disfavored and strictly construed to limit their application. *Id.*; *Hulett v. State,* 552 N.E.2d 47 (Ind.Ct.App.1990), *trans. denied.*

Rule 501, adopted in Indiana effective January 1, 1994, requires that, except as expressly provided in the rule, no one has a privilege to refuse to be a witness or to disclose any matter. It provides in pertinent part:

(a) **General Rule.** Except as provided by constitution or statute as enacted or interpreted by the courts of this State or by these or other rules promulgated by the Indiana Supreme Court or by principles of common law in light of reason and experience, no person has a privilege to:

(1) refuse to be a witness; [or]

(2) refuse to disclose any matter[.]

The above language is similar to that used in Fed.R.Evid. 501, which provides in pertinent part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

In *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the United States Supreme Court commented on the language in Fed.R.Evid. 501 that allows courts to develop the law of privilege. The court stated:

> The Federal Rules of Evidence acknowledge the authority of the federal courts to continue the evolutionary development of testimonial privileges in federal criminal trials "governed by the principles of the common law as they may be interpreted ... in the light of reason and experience." Fed. Rule Evid. 501.... In ... enacting Rule 501, Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to "provide the courts with the flexibility to develop rules of privilege on a case-by-case basis," ... and to leave the door open to change.

*Id.* at 47, 100 S.Ct. at 910–11.

Before the *Trammel* opinion, the federal privilege for adverse spousal testimony barred the testimony of one spouse against the other unless both consented. *Trammel,* 445 U.S. 40, 100 S.Ct. 906; *Hawkins v. United States,* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). In *Trammel,* the court noted the erosion of support in many states for such a broad privilege and commented on the trend in state law toward divesting the accused of the privilege to bar adverse spousal testimony. The court concluded that such a wide-sweeping rule was no longer justified, stating:

> [W]e conclude that the existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying. This modification-vesting the

privilege in the witness-spouse—furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs.

*Trammel,* 445 U.S. at 53, 100 S.Ct. at 914.

The purpose of the spousal testimonial privilege is to protect against the impact of the testimony on a marriage. *United States v. Byrd,* 750 F.2d 585 (7th Cir.1984). It applies to all testimony against a defendant spouse. *United States v. Lofton,* 957 F.2d 476 (7th Cir.1992).

In contrast to the slow evolution of the law with regard to privilege in the federal system, Indiana long ago abolished the rule of absolute spousal incompetence in favor of a narrow privilege encompassing only confidential communications and information gained by reason of the marital relationship. *Shepherd v. State,* 257 Ind. 229, 277 N.E.2d 165 (1971); *Smith v. State,* 198 Ind. 156, 152 N.E. 803 (1926); *Vukodonovich v. State,* 197 Ind. 169, 150 N.E. 56 (1926). In *Vukodonovich,* the Court stated: "Husbands and wives, in this jurisdiction, may testify for or against each other in all cases, except as to confidential communications." *Id.* 150 N.E. at 57. This narrow marital communications privilege is found in Ind.Code § 34–1–14–5 (West 1983), and provides in pertinent part:

> The following persons shall not be competent witnesses:
>
> \* \* \* \* \* \*
>
> Sixth. Husband and wife, as to communications made to each other.

In addition, for more than 100 years, statutory and case law in Indiana have provided that, in a criminal case where, as here, the spouse was the injured party, even the marital communications privilege does not apply. *Jordan v. State,* 142 Ind. 422, 41 N.E. 817 (1895); *Doolittle v. State,* 93 Ind. 272 (1884).

The trial court in this case acknowledged that, under Indiana law, Brenda would be considered a competent witness, and the marital communications privilege would not prevent her from testifying against her husband. Despite this, the court was persuaded by the *Trammel, Byrd,* and *Lofton* opinions to expand the law of privilege in Indiana to

include the adverse spousal testimonial privilege. Because privileges are disfavored and strictly construed, the trial court's expansion of the law in this area was unjustified and erroneous.

## II.

 The State contends that battery would not fall within the spousal testimonial privilege as recognized in Indiana state courts. However, we noted in our discussion of Issue I that, in Indiana, confidential marital communications are the only communications subject to the spousal privilege. Battery is not a confidential communication. Accordingly, we need not address this issue.

## III.

We also decline to address the State's argument that, by pressing criminal charges and giving a sworn statement outlining the very details of the offense the State sought to elicit at Roach's trial, Brenda waived the right to refuse to testify on the basis of the spousal testimonial privilege.

The determination that Brenda's testimony fell within the spousal testimonial privilege was erroneous.

SULLIVAN and BAKER, JJ., concur.